**Mohammed Taoheed ANWO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

**No. 77–1879.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 17, 1978.

Decided June 19, 1979.

Lois E. Bruckner, Rockville, Md., for petitioner.

Lauri Steven Filppu, Atty., Dept. of Justice, Washington, D. C., with whom Richard I. Chaifetz, Atty., Dept. of Justice, Washington, D. C., was on the brief, for respondent.

Before BAZELON and McGOWAN, Circuit Judges, and GASCH,* United States District Judge for the United States District Court for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

Petitioner, a citizen of Liberia who has resided in this country since 1969, seeks a determination that he is eligible to ask the

* Sitting by designation pursuant to Title 28 U.S.C. § 292(a).

Attorney General for discretionary relief from an order of deportation. Petitioner's eligibility for relief turns on whether he has established a "lawful unrelinquished domicile of seven consecutive years" in accordance with § 212(c) of the Immigration and Nationality Act.[1] Because we find that the petitioner cannot satisfy this condition, we must affirm the deportation order of the Board of Immigration Appeals.

### I.

Mohammed Taoheed Anwo entered the United States on a student visa in 1969. In 1971 he married Edith Lewis, also from Liberia, who was then a resident alien but is now an American citizen. Two years later, pursuant to § 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255 (1976), Anwo's immigration status was adjusted to permanent resident. Petitioner now lives in Washington, D. C., separated from his wife and son in New Jersey.

On September 29, 1975, Anwo appeared before a federal magistrate, pleaded guilty to a charge of possessing five pounds of marijuana, and was placed on probation for two years. Shortly thereafter, in November, 1975, the Immigration and Naturalization Service (INS) began deportation proceedings under § 241(a)(11) of the Immigration Act, which permits deportation of an alien "who at any time has been convicted of a violation of . . . any law or regulation relating to the illicit possession of . . . marihuana."[2] In January,

1976, the Immigration Judge found Anwo deportable, and Anwo took an administrative appeal.

On August 4, 1977, the Board of Immigration Appeals issued its decision, rejecting petitioner's argument that he would be eligible for discretionary relief under § 212(c) and sustaining the order of deportation. A final deportation to Liberia was therefore issued on September 23, 1977, and this appeal followed.

### II.

Section 212(c) applies only to "[a]liens lawfully admitted for permanent residence . . . who are returning to a lawful unrelinquished domicile of seven consecutive years."[3] Since the incorporation of this provision in the Immigration and Nationality Act of 1952, the Board of Immigration Appeals has consistently interpreted the "lawful unrelinquished domicile" requirement to mean that the alien must have maintained a domicile in this country for seven consecutive years after his lawful admission for permanent residence. *See, e. g., Matter of S,* 5 I&N Dec. 116 (1953). In *Tim Lok v. Immigration & Naturalization Service,*[4] however, the Second Circuit recently rejected this interpretation. The court concluded that the phrase "lawful unrelinquished domicile" does not imply that the alien must hold permanent resident status for all seven years; rather he only need show that he has been lawfully domiciled in

---

1. 8 U.S.C. § 1182(c) (1976):

 Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of paragraphs (1) to (25), (30), and (31) of subsection (a) of this section.

2. 8 U.S.C. § 1251(a)(11)(1976).

3. 8 U.S.C. § 1182(c) (1976). By its terms, this statute only pertains to resident aliens who travelled abroad temporarily and wish to appeal INS denial of permission to reenter the country. *See* note 1 *supra.* In *Francis v. Immigration & Naturalization Service,* 532 F.2d 268 (2d Cir. 1976), the Second Circuit ruled

that Congress could not constitutionally confine this possible relief to aliens who leave the country: "[A]n alien whose ties with this country. are so strong that he has never departed . . . should receive at least as much consideration as an individual who may leave . . . ." *Id.* at 273. Following the decision in *Francis,* the INS has held that relief under § 212(c) is available in deportation proceedings even if the alien has not left the country, and the Board of Immigration Appeals did not deny § 212(c) eligibility to Anwo on this ground. Similarly, Anwo's eligibility as an "alien[ ] lawfully admitted for permanent residence" is not challenged.

4. 548 F.2d 37 (2d Cir. 1977).

this country for seven years and that he is a permanent resident at the time he applies for discretionary relief.

Despite the Second Circuit's decision in *Tim Lok,* the Board of Immigration Appeals denied Anwo's request to remand his case to permit him to develop evidence on his eligibility for relief under § 212(c).[5] The Board reiterated its view that the enactment of § 212(c) in 1952 evidenced a specific congressional intent to narrow the scope of discretionary relief from that which had previously been available under the Seventh Proviso to section 3 of the Immigration Act of 1917.[6] Consistent with its reading of the statute and the legislative history, the Board, declined to accept *Tim Lok's* interpretation of § 212(c) and instead adhered to its position that § 212(c) is available only to one who has both (a) established a lawful permanent residence, and (b) maintained it for seven consecutive years.

 We need not now choose between the conflicting interpretations of the Board and the Second Circuit, for we are convinced that even under the more permissive *Tim Lok* standard, Anwo has failed to satisfy § 212(c)'s requirement of a "lawful unrelinquished domicile of seven consecutive years." Although the word "domicile" is nowhere defined in the Immigration & Nationality Act, it is generally accepted that domicile is not established unless an individual intends to reside permanently or indefinitely in the new location.[7] For at least three of the seven years during which petitioner claims to have been lawfully domiciled in this country, he held the status of a non-immigrant student. In order to qualify for a student visa, however, the alien must "enter the United States temporarily and solely for the purpose of pursuing such a course of study" and must maintain "a residence in a foreign country which he has no intention of abandoning." 8 U.S.C. § 1101-(a)(15)(F)(i)(1976). Thus Anwo could not have established a "lawful domicile" in the United States during the period in which he held a student visa. On the one hand, if Anwo complied with the terms of his visa and did not intend to abandon his residence in Liberia, then he was not "domiciled" in this country; on the other hand, if Anwo did intend to make the United States his permanent home and domicile, then he violated the conditions of his student visa and was not here "lawfully."[8] Under either

---

5. Because *Tim Lok* was decided while Anwo's case was pending before the Board of Immigration Appeals, petitioner's request for a remand was first tendered at oral argument before the Board.

6. *See* S.Rep. No. 1515, 81st Cong., 2d Sess. 384 (1950); H.R.Rep. No. 1365, 82d Cong., 2d Sess. 51 (1952), U.S.Code Cong. & Admin.News 1952, p. 1653. The Seventh Proviso read:

 *Provided further,* [7] That aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Secretary of Labor, and under such conditions as he may prescribe.

 Act of Feb. 5, 1917, ch. 29, § 3, 39 Stat. 878. Thus the 1952 Act added two qualifications to eligibility for discretionary relief: the alien must have been "lawfully admitted for permanent residence" and the domicile of seven consecutive years to which the alien is returning must be "lawful."

7. *See, e. g., Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915); *cf. District of Columbia v. Murphy,* 314 U.S. 441, 62 S.Ct. 303, 86 L.Ed. 329 (1941); *Stine v. Moore,* 213 F.2d 446, 448 (5th Cir. 1954) ("Residence in

fact, and the intention of making the place of residence one's home, are essential elements of domicile.") It is this element of intent to establish a permanent abode that distinguishes "domicile" from "residence," which is defined in the Act as the "principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(a)(33) (1976). *Cf. Bache Halsey Stuart, Inc. v. Namm,* 446 F.Supp. 692, 694 (S.D.N.Y.1978) ("It is well established that domicile entails not only residence in fact, but also *intent to make that place of residence one's home.*")

8. Our conclusion that petitioner cannot be lawfully domiciled in this country while holding a student visa is buttressed by the Supreme Court's recent decision in *Elkins v. Moreno,* 435 U.S. 647, 98 S.Ct. 1338, 55 L.Ed.2d 614 (1978). In that case, the Court considered whether nonimmigrant aliens admitted under 8 U.S.C. § 1101(a)(15)(G)(iv) (employees of international organizations or their dependents) could acquire Maryland domicile for "in-state" tuition purposes. Although *Elkins* did not involve an interpretation of the language of § 212(c), the Court indicated that under the immigration laws, a nonimmigrant student

hypothesis, Anwo cannot satisfy the eligibility requirements of § 212(c).[9]

Accordingly, the order of the Board of Immigration Appeals is

*Affirmed.*

could not lawfully maintain a domicile in this country:

. . . Congress expressly conditioned admission for some purposes on an intent not to abandon a foreign residence or, by implication, on an intent not to seek domicile in the United States. Thus, . . . a nonimmigrant student is defined as "an alien having a residence in a foreign country which he has no intention of abandoning . . . and who seeks to enter the United States temporarily and solely for the purpose of pursuing . . . a course of study. . . ." § 101(a)(15)(F). . . .

By including restrictions on intent in the definition of some nonimmigrant classes, Congress must have meant aliens to be barred from these classes if their real purpose in coming to the United States was to immigrate permanently. Moreover, since a nonimmigrant alien who does not maintain the conditions attached to his status can be deported, see § 241(a)(9) of the 1952 Act, 66 Stat. 206, as amended, 8 U.S.C. § 1251(a)(9) (1976 ed.), it is also clear that Congress intended that, in the absence of an adjustment of status . . ., nonimmigrants in restricted classes who sought to establish domicile would be deported.

98 S.Ct. at 1349.

9. Anwo also claims that deportation under § 241(a)(11) denies him equal protection of the laws as guaranteed by the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954). He points out that a citizen who is convicted of a marijuana offense suffers only the criminal sanction established by local statute, while aliens also face automatic deportation. In view of the plenary authority of Congress over national policy for entry and deportation, however, petitioner's claim on this point must be rejected. *See, e. g., Fiallo v. Bell,* 430 U.S. 787, 796, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954).