Honorable Carl A. Parker Chairman Education Committee Texas State Senate P.O. Box 12068, Capitol Station Austin, Texas 78711
Re: Whether foreign nationals admitted to the United States under an F-1 "student" visa may be charged a higher tuition rate at a state university than that charged to Texas residents or to residents of another state Dear Senator Parker:
 You inquire whether the constitutional questions discussed in Attorney General Opinions JM-267 (1984) and JM-241 (1984) prevent charging foreign nationals admitted to this country with F-1 student visas a higher tuition rate at a state university than that charged to Texas residents or to other students who are not Texas residents. The latter group includes out-of-state students who are citizens of the United States and students who are aliens with visas other than an F-1 visa. It is our opinion that the state may charge foreign students with F-1 visas a higher rate of tuition than it charges students who are Texas residents but may not charge such foreign students a higher rate of tuition than it charges students who, for tuition purposes, are not Texas residents.
The Texas Education Code provides different rates of tuition at state supported institutions of higher education for students who are residents of Texas and for students who are not residents of Texas. See Educ. Code § 54.051. The constitutionality of that distinction is not questioned. See Note, The Constitutionality of Nonresident Tuition, 55 Minn.L.Rev. 1139 (1971).
Attorney General Opinion JM-241 discussed the applicability of the United States Supreme Court decision in Toll v. Moreno,458 U.S. 1 (1982), to the provisions of section 54.057 of the Education Code. That section of the Education Code provides that two groups of immigrant aliens may qualify for the resident status and resident tuition in Texas, namely, those with a visa permitting permanent residence and those who declare their intention to become United States citizens. By implication, section 54.057 states that all other aliens, including all nonimmigrant aliens, are precluded from establishing that their domicile is Texas and that they are in fact Texas residents who qualify for resident tuition. We concluded in Attorney General Opinion JM-241 that the Supremacy Clause of the United States Constitution, as interpreted by Toll v. Moreno, prohibits a state from denying certain categories of nonimmigrant aliens the right to qualify for resident tuition when such nonimmigrant aliens can show that they meet the standards for resident status required of citizens. We also conclude that the decision in Toll v. Moreno does not apply to a nonimmigrant alien in this country under an F-1 visa because that is one of the categories for which Congress expressly conditioned admission to this country on conditions which have the effect of precluding the establishment of a domicile in the United States. The Immigration and Nationality Act (8 U.S.C. § 1101(a)(15) (1982)) defines an alien with an F-1 visa as
 (F)(i) an alien having a residence in a foreign country which he has no intention of abandoning, who is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in a language training program in the United States. . . .
Although the word domicile is not defined in the Immigration and Nationality Act, it generally is accepted that domicile is not established unless the person intends to establish a permanent abode or reside indefinitely in a location. In order to qualify for an F-1 student visa, the alien must "enter the United States temporarily and solely for the purpose of pursuing such a course of study" and must maintain "a residence in a foreign country which he has no intention of abandoning." Hence, the courts have concluded that a person cannot be lawfully domiciled in this country while holding a student visa. See Elkins v. Moreno,435 U.S. 647, 665 (1978); Anwo v. Immigration Naturalization Service,607 F.2d 435, 437 (D.C. Cir. 1979). Since the Immigration and Nationality Act does not impose such restrictions on every nonimmigrant class, the courts interpret the act to mean that Congress intended to allow nonrestricted, nonimmigrant aliens to adopt the United States as their domicile. See Toll v. Moreno,458 U.S. at 14.
Accordingly, it is our opinion that the Supremacy Clause of the United States Constitution as interpreted by Toll v. Moreno does not prevent the application of the limitations in section 54.057
of the Education Code to persons admitted to this country with F-1 student visas. We conclude that the Education Code constitutionally can provide for a higher tuition rate to be charged to foreign students with F-1 visas than the tuition rate charged students who are Texas residents for tuition purposes.
In Attorney General Opinion JM-267 we concluded that a state statute which provides a higher rate of tuition at state institutions of higher education for nonresident students who are aliens than the rate charged nonresident students who are United States citizens would not be upheld by the courts if challenged.
The Fourteenth Amendment to the United States Constitution provides that no state may deny to any person within its jurisdiction the equal protection of the laws. The guarantee of equal protection applies to all persons within the territorial jurisdiction of a state regardless of whether a person is a citizen of this country or is a citizen of a foreign country. See Ambach v. Norwick, 441 U.S. 68 (1979); Yick Wo v. Hopkins,118 U.S. 356 (1886). The obligation of a state to provide the protection of equal laws is imposed by the Constitution on the state with each state responsible for its own laws establishing the rights and duties of persons within its borders. See Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 350 (1938). Congressional debate concerning the resolution which became theFourteenth Amendment confirms the intention to make its provisions applicable to all who "may happen to be" within the jurisdiction of a state. See Plyler v. Doe, 457 U.S. 202, 214-15 (1982). In concluding that illegal aliens may claim the benefits of theFourteenth Amendment's guarantee of equal protection, the Supreme Court in Plyler v. Doe stated
 [t]hat a person's initial entry into a State, or into the United States, was unlawful, and that he may for that reason be expelled, cannot negate the simple fact of his presence within the State's territorial perimeter. Given such presence, he is subject to the full range of obligations imposed by the State's civil and criminal laws. And until he leaves the jurisdiction — either voluntarily, or involuntarily in accordance with the Constitution and laws of the United States — he is entitled to the equal protection of the laws that a State may choose to establish.
Id. at 215.
A person of foreign nationality with an F-1 student visa who is attending school in this state is present within the state's territorial perimeter and is entitled to the equal protection of the laws of the state. The fact that the student has a "residence in a foreign country which he has no intention of abandoning" does not negate his presence in this country and in this state and does not deny the student the right to equal protection of the laws.
Additionally, we concluded in Attorney General Opinion JM-267
that the courts would not allow a state subtly to affect the country's international relations or foreign policy or to interfere with the federal government's exclusive right to control the immigration and admission of aliens to this country. In Elkins v. Moreno, 435 U.S. 647, the United States Supreme Court determined that Congress defined the nonimmigrant classes of aliens in the Immigration and Nationality Act to provide for the needs of international diplomacy, tourism, and commerce.
It is our opinion that the constitutional problems discussed in Attorney General Opinion JM-267 are applicable to foreign students admitted to this country with F-1 visas and would render unconstitutional a state statute which provides for a higher rate of tuition to be charged to foreign students with F-1 visas than the rate charged to citizens and aliens with other categories of visas who are subject to the payment of nonresident tuition because they are not Texas residents eligible for resident tuition in this state.
 SUMMARY
The Texas Education Code constitutionally can provide for a higher tuition rate to be charged to foreign students admitted to this country with F-1 visas than the tuition rate charged Texas resident students. The Education Code cannot provide constitutionally for a higher tuition rate to be charged to foreign students with F-1 visas than the tuition rate charged citizens and other alien students who are not Texas residents for tuition purposes.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Tom Green First Assistant Attorney General
 David R. Richards Executive Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Nancy Sutton Assistant Attorney General