15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Antonio CAMACHO, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70566.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1994.
Decided Feb. 2, 1994.
 
 Before: ALDISERT,* WIGGINS and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Petitioner Antonio Camacho appeals the decision of the Board of Immigration Appeals dismissing his appeal and affirming the decision of the immigration judge finding him deportable based on his conviction of a controlled substance offense and denying his application for a discretionary waiver of deportability. Camacho also appeals the Board's denial of his motion to reopen his case on the ground that he had become eligible for such relief only by filing a meritless appeal.
 
 I.
 
 3
 Camacho, a native of the Philippines who entered this country as an exchange visitor on July 7, 1970, obtained the status of an alien lawfully admitted to the United States for permanent residence on June 1, 1982. He was practicing medicine in the state of Illinois when he was convicted for unlawfully prescribing drugs on September 11, 1984. His license to practice medicine was revoked, and he was sentenced to thirty months probation and a $10,000 fine.
 
 
 4
 Deportation proceedings commenced on November 28, 1984 when the Immigration and Naturalization Service (INS) issued an Order to Show Cause against Camacho. The INS asserted that, because of his conviction, Camacho was deportable under Section 241(a)(11) of the Immigration and Nationality Act (hereinafter "the Act"), 8 U.S.C. Sec. 1251(a)(11) (1988).
 
 
 5
 Camacho first appeared before the immigration judge on February 1, 1985. After stating that he was not prepared to plead, Camacho was granted a continuance until June 27, 1985. He then requested, and was granted, a second continuance until January 13, 1986.
 
 
 6
 The hearing did not reconvene until May 12, 1986, at which time Camacho's counsel requested a change of venue to California "so that we might more completely present the case in support of our contention that he is eligible for 212(c) relief." A.R. at 473. The judge declined to entertain the change of venue motion until the issue of Camacho's deportability was resolved.
 
 
 7
 At this hearing, the INS introduced a certified copy of an Illinois conviction for unlawful delivery of a controlled substance bearing the name "Antonio C. Camacho." The immigration judge instructed Camacho to provide his full name. On advice of his former counsel, Camacho refused to provide his middle initial on the ground that it might send the INS on a "fishing expedition" in violation of his Fifth Amendment right against self-incrimination. Id. at 449. Camacho was then ordered to provide his full name, whereupon he admitted that his middle initial was "C" and that the conviction related to his past unlawful activity. It was then determined that Camacho was deportable.
 
 
 8
 At the May 12, 1986 hearing, Camacho further argued that he was eligible for relief under Section 212(c) of the Act, 8 U.S.C. Sec. 1182(c), which provides for a discretionary waiver of deportability for eligible aliens. The immigration judge ruled Camacho ineligible this relief because he had been a lawful permanent resident only since 1982, a period less than the requisite seven years.
 
 
 9
 Camacho filed an appeal to the Board of Immigration Appeals on May 22, 1986. On October 14, 1988 he requested, and was granted, an extension until January 6, 1989 to file an appellate brief. No brief was filed. On August 28, 1991, the Board affirmed the immigration judge's decision and dismissed Camacho's appeal, holding that there was no violation of his Fifth Amendment rights, that he was deportable "by clear, unequivocal, and convincing evidence" and that he was ineligible for Section 212(c) relief because he had not attained seven consecutive years of lawful domicile after becoming a permanent resident. A.R. at 409-10. The Board rejected Camacho's argument that Section 212(c) relief should be available to an alien who accrued seven years of unrelinquished domicile in the United States and was also a lawful permanent resident at the time of application, a view held by the Court of Appeals for the Second Circuit, Lok v. I.N.S., 548 F.2d 37, 40 (2d Cir.1977), but rejected by every other court of appeals to address the issue, as well as by the Board itself through forty years of precedent. See Matter of Anwo, 16 I & N Dec. 293 (BIA1977), aff'd sub nom., Anwo v. I.N.S., 607 F.2d 435 (D.C.Cir.1979). In Anwo, 607 F.2d at 436, the court noted:
 
 
 10
 Since the incorporation of this provision in the Immigration and Nationality Act of 1952, the Board of Immigration Appeals has consistently interpreted the "lawful unrelinquished domicile" requirement to mean that the alien must have maintained a domicile in this country for seven consecutive years after his lawful admission for permanent residence.
 
 
 11
 Thus, one who has merely been present or lived in the United States for seven years without being admitted as a permanent resident, such as an exchange student, does not qualify for Section 212(c) relief.
 
 
 12
 On October 23, 1991, after the Board dismissed Camacho's appeal, the INS issued a Warrant of Deportation. On November 4, 1991, one day before he was required to surrender for deportation, Camacho, through his former counsel, filed a motion to reopen and remand on the ground that he had become eligible for a discretionary waiver of deportability under Section 212(c).
 
 
 13
 On January 10, 1992, Camacho, through new counsel, filed an amended motion to reopen and stay of deportation on the ground that his former counsel provided ineffective assistance. On May 29, 1992, the Board denied Camacho's petition to reopen. It determined that, although Camacho had by that time acquired the requisite seven years of lawful permanent residency, he did so by virtue of an appeal from the immigration judge's decision that "lacked an arguable basis in law or fact, and was filed for an improper purpose, such as to cause unnecessary delay." A.R. at 5. Regarding the three contentions raised by Camacho in his earlier appeal, the Board stated:
 
 
 14
 The respondent's contention in his original appeal that he should not have been forced to testify on the deportation issue had no merit because he only testified to his name and a conviction which occurred in 1984. The respondent's allegation that he was eligible for section 212(c) relief had been decided against him outside of the Second Circuit Court of Appeals. It follows that if deportability and the question of relief from deportation were settled issues, then the issue of the change of venue was rendered moot.
 
 
 15
 Id. (citations omitted).
 
 
 16
 On August 17, 1992, Camacho petitioned for review of the Board's May 29, 1992 denial of his motion to reopen. On August 21, 1992 he submitted a second petition for review, fashioned as an "amended" petition, requesting us to review the Board's August 28, 1991 dismissal of his appeal from the underlying order of deportation, as well the denial of his motion to reopen.
 
 II.
 
 17
 In the petition for review now before us, Camacho contends that the Board erred (1) in dismissing his appeal and (2) in denying his petition to reopen on the ground that his Section 212(c) eligibility was obtained through a meritless appeal. Specifically, Camacho argues that his appeal should not have been dismissed because serious Fifth Amendment issues were implicated and because, at the time of the appeal to the Board, there was a reasonable basis for the legal argument that the Court of Appeals for the Seventh Circuit would adopt the reasoning of the Second Circuit in Lok as the proper measure for Section 212(c) eligibility. This leads to Camacho's second and more substantive contention that the Board erred in denying his motion to reopen because, even if the appeal was properly dismissed, it did not lack merit, and because he has since become eligible for Section 212(c) relief.
 
 
 18
 We review the Board's decision to dismiss an appeal for abuse of discretion. Cuadras v. I.N.S., 910 F.2d 567, 572 (9th Cir.1990). We review the Board's denial of a motion to reopen de novo where that denial is based on an error of law. Wall v. I.N.S., 722 F.2d 1442, 1444 (9th Cir.1984). However, our review is for an abuse of discretion where the Board's decision not to reopen is based on a factual determination that an appeal lacked merit and was filed for an improper purpose. I.N.S. v. Rios-Pineda, 471 U.S. 444, 448-49 (1985).
 
 
 19
 We will deny the petition. We conclude that the Board neither abused its discretion in dismissing Camacho's appeal nor in denying his petition to reopen given the facts of this case.
 
 III.
 
 20
 We first address Camacho's contention that the Board erred in dismissing his appeal.
 
 A.
 
 21
 Camacho contends that his Fifth Amendment right against self-incrimination was violated because he was compelled to testify about his connection to a prior criminal conviction. Even though a deportation hearing is not a criminal proceeding, aliens in such hearings do enjoy a limited Fifth Amendment right to silence when answering might subject them to future criminal prosecution. Wall, 722 F.2d at 1443. However, the right to silence does not attach where the inquiry regards a prior conviction. Id. Consequently, Camacho had no constitutional right to refuse to answer questions surrounding a prior conviction for which he had already been punished. Similarly, the Fifth Amendment privilege against self-incrimination does not include the right in a denaturalization case to refuse to answer questions regarding naturalization, including time and place of birth. United States v. Costello, 222 F.2d 656, 662 (2d Cir), cert. denied, 350 U.S. 847 (1955). We believe that the name of a participant in an immigration proceeding is administrative information in the same vein as time and place of birth and that no Fifth Amendment right to silence attaches. In any case, Camacho's counsel advised him at the May 12, 1986 hearing not to provide his full name on the ground that it might send the Government "on a fishing expedition" that "eventually could very well lead to further actions against my client." A.R. at 449: We conclude that this bare statement is insufficient to demonstrate that such testimony might subject Camacho to future criminal prosecution.
 
 B.
 
 22
 Camacho further argues that the Board erred in dismissing his appeal on the ground that he was ineligible for Section 212(c) relief. Camacho entered the United States in 1970, but did not attain the status of permanent resident until 1982. With the lone exception of the Court of Appeals for the Second Circuit, all courts of appeals to consider the issue have agreed that, for the purposes of Section 212(c) eligibility, the seven year period does not commence until the alien becomes a lawful permanent resident. See Castillo-Felix v. I.N.S., 601 F.2d 459, 467 (9th Cir.1979); Chiravacharadhikul v. I.N.S., 645 F.2d 248, 250 (4th Cir.), cert. denied, 454 U.S. 893 (1981); Reid v. I.N.S., 756 F.2d 7, 10 (3d Cir.1985); Michelson v. I.N.S., 897 F.2d 465, 468-69 (10th Cir.1990). Moreover, this has long been the position of the Board, as the Court of Appeals for the Fifth Circuit noted: "For the last forty years, the [Board] has interpreted this language as requiring that, to be statutorily eligible, the alien must have been a lawful permanent resident of the United States for at least seven years prior to his or her application for Sec. 212(c) relief." Madrid-Tavarez v. I.N.S., 999 F.2d 111, 112 (5th Cir.1993).
 
 
 23
 Camacho now argues that Section 212(c) eligibility should be available in the Seventh Circuit to any alien who has accrued seven years of lawful unrelinquished domicile and is also a lawful permanent resident at the time of application for relief, the position embraced by the Court of Appeals for the Second Circuit in Lok, 548 F.2d at 40. The Board rejected Camacho's argument that he was eligible for relief, noting that "[w]e had previously declined to apply the decision in Lok v. I.N.S., 548 F.2d 37 (2d Cir.1977) in cases arising outside the Second Circuit." A.R. at 411 (citing Matter of Anwo, 16 I & N Dec. 293). We are persuaded that in rejecting this contention, the Board acted well within appropriate bounds of discretion in light of the long history of Board precedent and the general consensus of reviewing courts, including our own 1979 determination in Castillo-Felix, 601 F.2d at 467.
 
 IV.
 
 24
 We next address Camacho's contention that the Board erred in denying his motion to reopen.
 
 A.
 
 25
 Camacho argues that, even if the Board properly dismissed his appeal on the merits, it erred in later characterizing it as meritless in the denial of his motion to reopen. This is an important and distinct argument because, says Camacho, if his Section 212(c) claim was meritorious and not filed in order to qualify for Section 212(c) relief, then the Board may have abused its discretion in denying his petition to reopen now that he has attained seven years of permanent, lawful, unrelinquished domicile. Thus, we must examine the record as a whole and ascertain the Board's reasons for concluding that Camacho's appeal was filed for the improper purpose of attaining Section 212(c) eligibility.
 
 B.
 
 26
 After reviewing the record in its entirety, we conclude that the Board did not abuse its discretion in denying petitioner's motion to reopen. The Attorney General has "broad discretion" to grant or deny a motion to reopen. I.N.S. v. Doherty, 112 S.Ct. 719, 724 (1992). Moreover, a party seeking to reopen bears a "heavy burden." I.N.S. v. Abudu, 485 U.S. 94, 110 (1988). As the Supreme Court noted:
 
 
 27
 Motions for reopening of immigration proceedings are disfavored.... This is especially true in a deportation proceeding where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.
 
 
 28
 Doherty, 112 S.Ct. at 724-25 (citations omitted).
 
 
 29
 Three years earlier, the Court explained why it grants broad discretion to the Board:
 
 
 30
 No substance was found in any of the points raised on appeal, in and of themselves, and we agree with the [Board] that they were without merit. The purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying the legal prerequisites. One illegally present in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible. The Attorney General can, in exercising his [or her] discretion, legitimately avoid creating further incentive for stalling by refusing to reopen suspension proceedings for those who become eligible for such suspension only because of the passage of time while there meritless appeals dragged on.
 
 
 31
 Rios-Pineda, 471 U.S. at 450.
 
 
 32
 Stripped to its essence, the petitioner's contentions on appeal to the Board were that (1) he lived in Illinois, a state which came within the jurisdiction of the Court of Appeals for the Seventh Circuit, and (2) although all the courts of appeals which had met the issue had ruled against the position he was maintaining except the Second Circuit in Lok, there remained the possibility that the Seventh Circuit would accept the Lok reasoning so that a valid basis for appeal existed. But even the Court of Appeals for the Seventh Circuit, the court Camacho insists has been silent on the issue, has implicitly ruled in accordance with the majority of courts of appeals:
 
 
 33
 To be eligible for discretionary relief from deportation under Sec. 212(c) an alien must (1) be "lawfully admitted for permanent residence" and (2) have "a lawful unrelinquished domicile of seven consecutive years." The first prong was admittedly satisfied in this case. The parties now also agree that the seven-year period of lawful domicile is to be measured from ... the date [the alien] was admitted to this country as a lawful resident.
 
 
 34
 Variamparambil v. I.N.S., 831 F.2d 1362, 1365-66 (7th Cir.1987). Significantly, this court referred to "lawful resident" as the beginning point of the seven year measurement, a status Camacho did not attain until 1982. Thus, under Variamparambil, Camacho was not eligible for Section 212(c) until 1989, years after the May 12, 1986 hearing. Although Variamparambil followed Camacho's one-page May 22, 1986 notice of appeal of the immigration judge's decision, it preceded his October 14, 1988 letter requesting an extension to file an appeal brief, a brief that was not forthcoming. Nevertheless, if there were nothing more to this case, then Camacho's asserted attempt to establish the law of the Seventh Circuit through his appeal might have had some merit. But there is more.
 
 C.
 
 35
 The Board stated in its decision that Camacho's appeal "lacked an arguable basis in law or fact, and was filed for an improper purpose, such as to cause unnecessary delay." A.R. at 5. The Board later stated that Camacho's original appeal "had no points of merit. The only apparent purpose was to delay a final administrative order of deportation until after 7 years of lawful unrelinquished domicile subsequent to lawful permanent residence." Id. at 6. We must view the Board's determination that Camacho's appeal was filed for an improper purpose in light of the procedural history of this action.
 
 
 36
 Camacho had already requested, and was granted, numerous continuances. He filed many other motions, including a request for 60 additional days to submit an appeal brief that was never forthcoming, as the Board noted in its decision. Id. An action commenced in 1984 has dragged on now for ten years, in part because of Camacho's litigation strategy.
 
 
 37
 In addition, Camacho's contention that he was attempting to establish the law of the Seventh Circuit was not fully articulated to the immigration judge or the Board at the time. As noted, he never filed a brief in support of his appeal. Rather, the Board concluded that he mentioned this argument in "bare allegations in the Notice of Appeal." Id. Although Camacho did raise his Lok argument at the May 12, 1986 hearing before the immigration judge, he neither made reference to nor indicated any desire to establish the law of the Seventh Circuit. Indeed, the facts suggest that Camacho was unaware that the issue of Section 212(c) might be an open question in the Seventh Circuit.
 
 
 38
 What is most devastating to petitioner's present contention that he wished to make new law in the Seventh Circuit is the fact that, as early as May 12, 1986--long before his appeal to the Board--Camacho requested the immigration judge to transfer the proceedings to California because his home was now in that state and because he could better pursue his Section 212(c) claim there. Indeed in one sentence his counsel insisted that Camacho was eligible for Section 212(c) relief, theoretically because he believed the Seventh Circuit might accept the teachings of Lok, while in the next he argued for a change of venue to California. Id. at 466. Counsel for Camacho later stated: "I believe that Matter of Lok does in fact [govern]. I believe my client is eligible ... for the reasons we've stated. And we would also pursue of course, our motion for Change of Venue ... to seek such relief in the venue that's most convenient for him to produce witnesses, documentation, and evidence...." Id. at 471. Finally, counsel for Camacho stated: "I would also ask that our motion for Change of Venue be granted so that we might more completely present the case in support of our contention that he is eligible for 212(c) relief." Id. at 473.
 
 
 39
 It is not necessary to elaborate that California is not a state within the confines of the Seventh Judicial Circuit. Nor need we dwell on the fact that the Court of Appeals for the Ninth Circuit has long rejected the Lok measure for Section 212(c) eligibility. See Castillo-Felix, 601 F.2d at 467. That Camacho aggressively moved for a change of venue demonstrates his lack of awareness of any inter-circuit variance regarding Section 212(c) eligibility or a lack of interest in establishing new law in the Seventh Circuit. His continued desire to litigate this matter in California is evidenced by the filing of a habeas corpus petition in the Northern District of California in 1992.
 
 
 40
 Viewing the history of this case in its entirety, it was not unreasonable for the Board to conclude that the purpose of Camacho's decade-long litigation, including numerous extensions and appeals, was to attain the requisite seven years of permanent residency. Accordingly, the Board's denial of Camacho's motion to reopen did not constitute an abuse of discretion.
 
 
 41
 We have considered all arguments presented by the petitioner. To the extent not discussed here, any other contentions have been considered and rejected.
 
 
 42
 The petition for review is DENIED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3