**Gustavo CASTELLON–CONTRERAS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–2089.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1994.

Decided Jan. 10, 1995.

Laurence J. Bolon (argued), Debofsky & Debofsky, Chicago, IL, for petitioner.

Janet Reno, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S.; James B. Burns, Office of the U.S. Atty., Chicago, IL, Norah Ascoli Schwarz (argued), U.S. Dept. of Justice, Civ. Div., Immigration Litigation; William J. Howard, Dept. of Justice, Office of Immigration Litigation, Washington, DC, Michael L. Cannon, I.N.S., El Paso, TX, and David J. Kline, Department of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before FLAUM, EASTERBROOK, and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

Petitioner Gustavo Castellon–Contreras ("Castellon–Contreras") appeals the Board of Immigration Appeal's affirmance of an Immigration Judge's determination that Castellon–Contreras did not have seven years of lawful unrelinquished domicile, thereby making him ineligible for discretionary relief from deportation. Although we disagree with the Board of Immigration Appeal's legal analysis, we agree with its conclusion and thus affirm.

## I.

Castellon–Contreras, a citizen of Mexico, came to the United States illegally in 1979 or 1980 and has continued living here since that time. He obtained lawful permanent resident ("LPR") status on November 4, 1990, pursuant to § 245A, the general amnesty provision, of the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1255a.[1]

On September 8, 1991, Castellon–Contreras entered the United States from Mexico as a returning resident. He was arrested carrying illegal drugs and on December 16, 1991, pleaded guilty to conspiracy to import 135 pounds of marijuana. The United States District Court for the Southern District of Texas imposed a 27 month sentence on Castellon–Contreras, the majority of which time he served before his release from prison.

The Immigration and Naturalization Service ("INS") initiated deportation proceedings against Castellon–Contreras on August 23, 1993, based on his controlled substance conviction. 8 U.S.C. §§ 1251(a)(2)(A)(iii), (a)(2)(B)(i). Castellon–Contreras conceded deportability, but sought a waiver of deportation under § 212(c) of the Immigration and Nationality Act ("Act"). That provision states in part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....

8 U.S.C. § 1182(c).[2]

In a December 9, 1993, decision, the Immigration Judge ("IJ") held that Castellon–Contreras could not receive this discretionary relief because he had not accumulated the required seven years of lawful domicile. In order to become a LPR, Castellon–Contreras had to admit that he had been in the United States illegally from sometime before January 1, 1982, until he applied for amnesty

---

1. IRCA, among other things, provided for the adjustment from illegal status to lawful permanent residence for aliens who could prove several things, including that they had been in the United States illegally since sometime before January 1, 1982. 8 U.S.C. § 1255a. IRCA also allowed for the legalization of a certain number of illegal aliens designated as Special Agricultural Workers. 8 U.S.C. § 1160.

2. Although by its terms § 212(c) applies only to returning residents, we have interpreted it to apply to LPRs who have not left the country but face deportation. *Akinyemi v. INS*, 969 F.2d 285, 288 n. 3 (7th Cir.1992); *Variamparambil v. INS*, 831 F.2d 1362, 1364 n. 1 (7th Cir.1987).

in 1987.[3] 8 U.S.C. § 1255a(a)(2)(A). This admission, the IJ held, was "incompatible with the conclusion that [Castellon–Contreras] had a lawful domicile during that period."

The Board of Immigration Appeals ("BIA") affirmed this decision. It first noted that IRCA did not contain any provision that would retroactively convert Castellon–Contreras's admitted illegal status into a legal one. The BIA then followed its long-standing holding that lawful domicile under § 212(c) does not start until one acquires LPR status. *See, e.g., Matter of Kim,* 17 I & N Dec. 144 (BIA 1979); *Matter of S,* 5 I & N Dec. 516 (BIA 1953). Because Castellon–Contreras had become a lawful permanent resident in 1990, he was not eligible for § 212(c) relief. This appeal followed.

## II.

Castellon–Contreras argues that "lawfully admitted for permanent residence," [4] and "lawful unrelinquished domicile" contained in § 212(c) have different meanings, contrary to the BIA's interpretation of that provision. In support of his contention, Castellon–Contreras relies on *Lok v. INS,* 548 F.2d 37 (2d Cir.1977) (*Lok I* ), in which the Second Circuit rejected the BIA's interpretation equating the two phrases. Castellon–Contreras contends that an alien can establish lawful domicile without becoming a LPR and that as long as he has seven years of lawful domicile, the alien need only have LPR status at the time of his application for § 212(c) relief. The INS, on the other hand, argues that we should defer to the BIA's long-standing, contemporaneous, and reasonable interpretation of § 212(c), that lawful domicile can only accumulate after one becomes a LPR.

The Fourth and Ninth Circuits have deferred to the BIA's interpretation of § 212(c). *Chiravacharadhikul v. INS,* 645 F.2d 248 (4th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *Castil-*

*lo–Felix v. INS,* 601 F.2d 459 (9th Cir.1979). The Third, Fifth and Eleventh Circuits have discussed, but not adopted, either the BIA or *Lok I* position. *See, e.g., Madrid–Tavarez,* 999 F.2d 111 (5th Cir.1993); *Graham v. INS,* 998 F.2d 194 (3d Cir.1993); *Melian v. INS,* 987 F.2d 1521 (11th Cir.1993). No other circuit has adopted the *Lok I* position.

Contrary to the INS's contention, we have not previously decided this question. Although we have stated that one must be a lawful permanent resident for seven years in order to be eligible for § 212(c) relief, *see, e.g., Groza v. INS,* 30 F.3d 814, 817 (7th Cir.1994); *Guillen–Garcia v. INS,* 999 F.2d 199, 203 (7th Cir.1993); *Ortiz–Salas v. INS,* 992 F.2d 105, 106 (7th Cir.1993); *Espinoza v. INS,* 991 F.2d 1294, 1297 (7th Cir.1993); *Chavez–Arreaga v. INS,* 952 F.2d 952, 953 (7th Cir.1991), these cases originated with *Variamparambil,* in which the parties simply agreed that the alien's lawful domicile had not started until he was admitted as a LPR. 831 F.2d at 1366. In none of our prior cases have we analyzed the language of § 212(c) or discussed deference to the BIA's interpretation of the phrase "lawful unrelinquished domicile." Furthermore, in the cases cited above, the question at issue involved the proper exercise of the BIA's discretion in denying relief from deportation, not the question of whether the aliens were eligible for that relief; our observations about LPR in the cases above did not impact the outcomes in those cases. Thus, we expressly address and decide today, for the first time, the meaning of "lawful unrelinquished domicile" under § 212(c).

In interpreting statutes, we must first determine legislative intent. *Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "If the intent of Congress is clear, that is the end of the matter; for the Court, as well as the agency,

---

**3.** Aliens actually had to make two applications—one for temporary residence and one to have that status adjusted to LPR. 8 U.S.C. § 1255a(a), (b)(1)(A). We will refer to the first as the application for amnesty, which could be made between May 5, 1987, and May 4, 1988. 8 U.S.C. § 1255a(a)(1)(A); 8 C.F.R. § 245a.2(a)(1).

**4.** The Act defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. If the statute is silent or ambiguous as to the question at issue, we must defer to any reasonable reading of the statute by the agency responsible for the enforcement and interpretation of the statute at issue.[5] *Id.* at 843–44, 104 S.Ct. at 2782.

Under *Chevron's* first step, the plain language of a statute is "the most reliable indicator of congressional intent." *Central States, et al. v. Cullum Companies,* 973 F.2d 1333, 1339 (7th Cir.1992) (citation omitted). It "should be conclusive except in the 'rare cases [in which] the literal application of a statue will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *see also United States v. Real Estate Known as 916 Douglas Ave.,* 903 F.2d 490, 492 (7th Cir.1990), *cert. denied sub nom. Born v. United States,* 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991) (We do not enforce the plain language of a statute only when "a literal interpretation would lead to an absurd result or thwart the purpose of the overall statutory scheme").

■ Domicile ordinarily is understood to mean physical presence and the intent to remain somewhere indefinitely. *Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir.1993); *Anwo v. INS,* 607 F.2d 435, 437 (D.C.Cir. 1979) ("Although the word 'domicile' is nowhere defined in the Immigration and Nationality Act, it is generally accepted that domicile is not established unless an individual intends to reside permanently or indefinitely in the new location."); *see also* Comment, *Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act,* 47 U.Chi.L.Rev. 771, 775–76 (1980). Nothing indicates that Congress intended to alter this "time-tested definition when it enacted § 212(c)." *Melian,* 987 F.2d at 1524.

■ In order to have a "lawful domicile," then, an alien must have the ability, under the immigration laws, to form the intent to remain in the United States indefinitely. *See Lok v. INS,* 681 F.2d 107, 109 (2d Cir.1982) ("[Petitioner] established lawful domicile only when his intent to remain here was legal under the immigration laws.") (*Lok II*). Thus, an alien who enters the country illegally cannot have a "lawful" intent to remain here. *See Madrid–Tavarez v. INS,* 999 F.2d 111, 112–13 (5th Cir.1993). If a non-immigrant enters the United States with a visa, a condition of which is "a residence in a foreign country which he has no intention of abandoning," *e.g.,* 8 U.S.C. §§ 1101(a)(15)(B), he likewise cannot accumulate "lawful domicile." *See Brown v. INS,* 856 F.2d 728, 731 (5th Cir.1988); *Anwo,* 607 F.2d at 437; *see also Lok II,* 681 F.2d at 109 (alien could not establish lawful domicile because he overstayed the 29 day maximum visit allowed by a seaman, 8 U.S.C. § 1282(a)(1)).

■ Given that lawful domicile has a meaning distinct from LPR, we find no reason to equate the two terms. We cannot defer to the BIA's interpretation of § 212(c) because the plain meaning of the term "lawful unrelinquished domicile" discussed above does not lead to either an absurd result, or one at odds with Congressional policy. Section 212(c) was designed to help "aliens who are likely to have established strong ties to this country," *Melian,* 987 F.2d at 1525 n. 6, something not requiring LPR status. *See also* S.Rep. No. 1515, 81st Cong., 2d Sess. 383 (1950). In *Elkins v. Moreno,* 435 U.S. 647, 666, 98 S.Ct. 1338, 1349–50, 55 L.Ed.2d 614 (1978), the Supreme Court noted that some non-immigrants could establish lawful domicile without LPR status. *See also Lok I,* 548 F.2d at 40 ("Moreover, as the Government admitted at argument, it is possible for aliens to possess a lawful domicile without being admitted for permanent residence."). We do not believe that allowing such aliens to apply this time as lawful domiciliaries

---

**5.** Congress has given the Attorney General the responsibility of administering and enforcing the immigration laws, with the power to delegate such duties to employees of the INS. 8 U.S.C. § 1103(a). The Attorney General has in turn delegated the authority to interpret the Act to the BIA. 8 C.F.R. § 3.1(d).

toward eligibility for § 212(c) relief can be said to lead to an absurd result. In addition, we cannot accept the contention, as does the Ninth Circuit, that Congress needed to more clearly indicate its intent to benefit these domiciliaries in this manner. *See Castillo–Felix*, 601 F.2d at 465. Thus, we agree with Castellon–Contreras that aliens can become lawful domiciliaries without first obtaining LPR status.

▮ Applying our interpretation of § 212(c), we now must determine whether Castellon–Contreras had seven consecutive years of lawful unrelinquished domicile making him eligible for relief from deportation. He contends that he gained lawful status, and thus lawful domicile, on the effective date of IRCA because after that date the INS could not freely deport him. 8 U.S.C. § 1255a(e)(1). We do not agree that this limitation changed his previously illegal presence here into a lawful status. Rather, in order to gain LPR status under IRCA, Castellon–Contreras had to establish that from before sometime before January 1, 1982, he "has resided continuously in the United States in an *unlawful* status since such date *and through the date the application is filed* under this subsection." 8 U.S.C. § 1255a(a)(2)(A) (emphasis added). *See United States v. Rodriguez–Rodriguez*, 840 F.2d 697, 699 (9th Cir.1988) (finding that an alien's illegal status did not become lawful until application for amnesty had been made). As the IJ noted, Castellon–Contreras cannot now claim that he was here legally when he previously admitted his illegal presence during that time period in order to benefit under IRCA.

▮ Once an alien applied for amnesty, however, his status was adjusted to that of "lawful temporary residence." 8 U.S.C. § 1255a(a); 8 C.F.R. § 245a.2(s) ("The status of an alien whose application for temporary residence status is approved shall be adjusted to that of a lawful temporary resident as of the date indicated on the application fee receipt issued at Service Legalization Office."). Thus, Castellon–Contreras was in the United States lawfully after the date on his application fee receipt.

▮ The question remains whether Castellon–Contreras then could have formed the requisite intent to remain here indefinitely. The fact that his residence was only "temporary" could lead to the conclusion that he could not have become domiciled. We do not agree. In order to have his temporary residence adjusted to LPR under IRCA, Castellon–Contreras had to continuously reside in the United States until he applied for LPR status. 8 U.S.C. § 1255a(b)(1)(B)(i); *see also* 8 U.S.C. § 1255a(b)(3)(A) (during temporary residence, "the Attorney General shall ... permit the alien to return to the United States after such brief and casual trips abroad as *reflect an intention* on the part of the alien to adjust to lawful permanent resident status....") (emphasis added). The INS concedes that after an alien's adjustment to LPR status, he can have the requisite intent to remain indefinitely. The fact that a temporary resident, such as Castellon–Contreras, had to reside continuously in the United States and did so in order to be able to remain here permanently leads us to conclude that he could establish lawful domicile as of the date on his application for amnesty fee receipt.[6]

▮ Nonetheless, Castellon–Contreras does not qualify for discretionary relief even under our reading of § 212(c) and IRCA. Aliens could not apply for lawful temporary

---

6. We agree with the INS that nothing in IRCA makes Castellon–Contreras's LPR status retroactive. We only decide that he did not need to be a LPR to establish lawful domicile and could have done so from the time he applied for amnesty. In enacting IRCA, Congress noted that the legalization program was intended to address the problems of the United States' "large undocumented alien population living and working within its borders. Many of these people have been here for a number of years and have be- come a part of their communities. Many have strong family ties here which include United States citizens and lawful residents." H. Rep. No. 682(I), 99th Cong., 2d Sess. 49 (1986), U.S.Code Cong. & Admin.News 1986, pp. 5649, 5643. Thus, allowing aliens who may have already formed the ties that Congress meant to protect by § 212(c) to begin accruing time toward eligibility for that relief from the date IRCA adjusted them to lawful status is not inconsistent with either § 212(c) or IRCA.

residence until May 5, 1987.[7] 8 U.S.C. § 1255a(a)(1)(A); 8 C.F.R. § 245a.2(a)(1). In order to be eligible for § 212(c) relief, Castellon–Contreras would have had to accumulate the seven years of lawful domicile after he became a lawful temporary resident.[8] Since he did not do so, we affirm the order of the BIA.

AFFIRMED.

7. We note that the record is devoid of any proof, or even reference, to the date that Castellon–Contreras actually applied for amnesty or had his status adjusted to that of a lawful temporary resident.

8. We have previously concluded that an immigrant's LPR status ends with the BIA's decision affirming deportation, a final administrative order. *Perez–Rodriguez v. INS*, 3 F.3d 1074, 1078–79 (7th Cir.1993); *Variamparambil*, 831 F.2d at 1366–67; *see also Henry v. INS*, 8 F.3d 426 (7th Cir.1993). In this case, the BIA issued its decision on April 12, 1994, less than seven years before the earliest date Castellon–Contreras could have established lawful domicile. Today we have held that lawful domicile can exist in the absence of LPR status. Without deciding what effect, if any, this decision has on the above cases, we note that after Castellon–Contreras became a LPR, his lawful domicile was based on that status. When his LPR status ended, Castellon–Contreras had no other legal basis for remaining in the United States. Thus, he could not accumulate seven years of lawful domicile during the pendency of this appeal.

Additionally, as noted above, though the date of the BIA's decision has been employed in deportation cases for determining eligibility for § 212(c) relief, the fact that Castellon–Contreras left and reentered the United States may alter the relevant date. *See* 8 U.S.C. § 1182(c) ("Aliens ... who are returning to a lawful unrelinquished domicile of seven consecutive years"). Thus, in order to be eligible for this relief, Castellon–Contreras may have had to have seven consecutive years of unrelinquished domicile as of September 8, 1991, the date he returned to the United States from Mexico with illegal drugs. However, Castellon–Contreras did not have the requisite lawful domicile as of either this date or the date of the BIA's decision. We therefore do not address today the eligibility date for discretionary relief under § 212(c) for an alien who enters the United States and is not excluded at the border, but whose entry eventually leads to his deportation.