### Francisca Elena ORTEGA de ROBLES, Petitioner,

v.

### IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 93–70461.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1995.

Decided June 2, 1995.

Raul M. Montes (Armando M. Montes and Gilbert M. Montes with him, on the brief) of Montes Montes & Montes, San Diego, CA, for petitioner.

Brenda E. Ellison (Donald A. Couvillon, on the brief), Office of Immigration Litigation, Dept. of Justice, Washington, DC, for respondent.

Before: CANBY, and NOONAN, Circuit Judges, and KING,* District Judge.

SAMUEL P. KING, District Judge:

Petitioner Francisca Elena Ortega de Robles petitions from an order of the Board of Immigration Appeals (BIA) denying her application for discretionary relief under sec-

---

* Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

tion 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). The BIA determined that Petitioner did not qualify for consideration for § 212(c) relief. We have jurisdiction pursuant to 8 U.S.C. § 1105a, and grant the petition and remand to the BIA for consideration of such relief.

## BACKGROUND

Petitioner is a married lawful permanent resident alien. Her husband and daughter are also lawful permanent residents; her son is an American citizen. Petitioner was born in Mexico. In June of 1980, at the age of 23, she came to this country as a nonimmigrant visitor and has resided here continuously since then.

On February 29, 1988, pursuant to amnesty provisions of the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1255a, Petitioner applied to legalize her status. Having presented a prima facie case, she was granted status as a legal "temporary resident alien" on June 8, 1988 and was issued an employment authorization card.[1]

Her status was adjusted on October 4, 1990 to an alien "lawfully admitted for permanent residence." 8 U.S.C. § 1255a(b)(1)

On May 14, 1991, Petitioner was convicted in state court on a charge of violating California Health and Safety Code § 11351 for possession for sale of cocaine. She pled guilty under a plea bargain. During the plea colloquy in state court, Petitioner denied possessing cocaine.[2] The conviction document reads "I plead guilty to the charge(s) described [above]" but depicts a scribbled-out description of the facts of the charge, with "People v. West"[3] written underneath. Petitioner did not appeal her conviction in state court nor did she seek to withdraw the plea.

Petitioner served 19 and one-half months of a three-year sentence and was then turned over to the Immigration and Naturalization Service (INS). On November 25, 1992, the INS began deportation proceedings by issuing an Order to Show Cause. At a hearing on January 26, 1993 before an immigration judge (IJ), Petitioner denied deportability,

---

1. Petitioner was thus a lawful temporary resident retroactively to February 29, 1988. *See* 8 C.F.R. § 245a.2(s).

2. The administrative record reflects the following plea colloquy:
 > The Court: ... Miss Robles Ortega, How do you now plead to a violation of count 2; Health and Safety Code Section 11351?
 > Defendant Robles: Guilty.
 > ....
 > The Court: And do you have any difficulty in answering any of the questions?
 > Defendant Robles: What I don't understand is the charge against me that I had possession of a drug and I never had it. I don't understand that.
 > The Court: Well, the—what you are pleading to is a charge where you are not admitting all of the allegations of that charge, but I did have to ask the prosecutor, if the case went to trial, what sort of evidence would he produce and he described that, so that's why I didn't ask you what you did. I asked the prosecutor what evidence he could present at trial.
 > Defendant Robles: Well, then, I don't know.
 > The Court: All Right. Miss Peters [Counsel for Robles], do you think you need any further inquiry or discussion with your client about the *People v. West* plea? ...
 > Counsel: Well, I have already discussed that with her in back.
 > Mr. Bennett [the state prosecutor]: Miss Robles, are you pleading guilty freely and volun-

tarily, because you want to take advantage of the plea bargain that's been offered to you and you don't want to risk the possible higher consequences of being convicted of a greater charge?
 > Defendant Robles: I understand all that, but what they are saying is that I had possession of the drug.
 > The Court: Well I didn't get the answer to Mr. Bennett's question. Do you want to repeat the question again, Mr. Bennett? Listen closely to his question and tell me your answer yes or no to that question.
 > Mr. Bennett: Miss Robles, are you pleading guilty freely and voluntarily, because you want to take advantage of the plea bargain that's been offered to you, rather than risk the possible higher consequences of being convicted of a greater charge?
 > Defendant Robles: Okay.
 > The Court: All right. I think that's sufficient. I'll accept your plea in this case pursuant to *People v. West* in view of the evidence that the district attorney can present.

3. "People v. West" refers to *People v. West*, 3 Cal.3d 595, 91 Cal.Rptr. 385, 477 P.2d 409 (1970) (holding that plea of guilty or nolo contendere is not rendered involuntary because it is a product of plea bargaining; an accepted plea bargain must be recorded; and court may accept a bargained plea to a lesser offense reasonably related to a charged offense).

asserting that she did not plead guilty to the elements of possession of cocaine. She also sought discretionary § 212(c) relief.

The IJ found Petitioner deportable based upon her conviction documents and found her ineligible for § 212(c) relief. She appealed to the BIA, which affirmed the IJ and dismissed her appeal. Petitioner timely petitioned for review to this court.

### ANALYSIS

#### 1. Deportability.

 Petitioner first asserts that the INS has not proven her deportability because it did not produce evidence that she possessed cocaine. Petitioner claims that her conviction is void and ambiguous. However, because Petitioner did not appeal her conviction, it was a final conviction. Criminal convictions cannot be collaterally attacked in deportation proceedings. *Urbina–Mauricio v. INS*, 989 F.2d 1085, 1089 (9th Cir.1993) (*citing Avila–Murrieta v. INS*, 762 F.2d 733, 736 (9th Cir.1985) and *Ocon–Perez v. INS*, 550 F.2d 1153, 1154 (9th Cir.1977)). "A criminal conviction is final for the purposes of immigration review if the alien has exhausted or waived direct appellate review." *Urbina–Mauricio*, 989 F.2d at 1089 (citing *Hernandez–Almanza v. INS*, 547 F.2d 100, 103 (9th Cir.1976)). This court cannot reexamine Petitioner's conviction here. The BIA did not err in affirming the finding of deportability.

#### 2. Eligibility for Section 212(c) Relief.

Section 212(c) of the INA provides in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a *lawful unrelinquished domicile of seven consecutive years,* may be admitted in the discretion of the Attorney General without regard to the provision of subsection (a) [classes of excludable aliens].

8 U.S.C. § 1182(c) (emphasis added). In addition to exclusion proceedings, § 212(c) also applies to deportation proceedings. *Tapia–Acuna v. INS*, 640 F.2d 223 (9th Cir.1981). It provides eligible resident aliens facing deportation a chance for discretionary relief. *Id.*

The BIA determined that Petitioner did not qualify for § 212(c) relief because she did not have a "lawful unrelinquished domicile" of seven consecutive years. It determined that she did not begin accruing time towards that period until October 4, 1990 when her status was adjusted to that of a "lawful permanent resident."

Petitioner asserts that she began accruing time earlier, beginning on February 29, 1988, when she acquired status as a "temporary resident alien" pursuant to IRCA. She cites *Castellon–Contreras v. INS*, 45 F.3d 149, 154 (7th Cir.1995) (alien gained lawful domicile for purposes of § 212(c) on date that he applied for amnesty under IRCA); *Lok v. INS*, 548 F.2d 37 (2d Cir.1977) ("*Lok I*") (seven year period could include periods of residency prior to date of lawful permanent residence); and Mark A. Hall, *Lawful Domicile Under Section 212(c) of the Immigration and Nationality Act,* 47 U.Chi.L.Rev. 771 (1980).

The INS, on the other hand, argues that our holding in *Castillo–Felix v. INS*, 601 F.2d 459 (9th Cir.1979) precludes the relief that Petitioner seeks. *Castillo–Felix* held that the period of "lawful unrelinquished domicile" for § 212(c) purposes begins accruing when an alien gains "lawful permanent residence." 601 F.2d at 467.

No decision of this circuit has squarely examined the holding and reasoning of *Castillo–Felix* in light of IRCA.[4] Notably, IRCA was enacted over seven years after this circuit decided *Castillo–Felix*. Therefore, the holding of *Castillo–Felix* does not necessarily apply to aliens obtaining legal status under IRCA. *See R.A.V. v. City of St. Paul,* — U.S. —, — n. 5, 112 S.Ct. 2538, 2545 n. 5, 120 L.Ed.2d 305 (1992) ("It is of course contrary to all traditions of our

---

4. This circuit followed *Castillo–Felix* in a similar context in *Raya–Ledesma v. INS*, 42 F.3d 1263, 1265 (9th Cir.1994). Although the alien in *Raya–Ledesma* also obtained legal status as a temporary resident alien under IRCA, the arguments raised here were not raised in that case. *See Raya–Ledesma v. INS*, 55 F.3d 418, 420 ("[w]e decline to reach this issue").

jurisprudence to consider the law on [a] point conclusively resolved by broad language in cases where the issue was not presented or even envisioned"); *United States v. Vroman,* 975 F.2d 669, 672 (9th Cir.1992) (precedent not controlling on issue not presented to prior panel), *cert. denied,* —— U.S. ——, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993); *United States v. Faulkner,* 952 F.2d 1066, 1071 n. 3 (9th Cir.1991) (same).

In *Lepe–Guitron v. INS,* · 16 F.3d 1021, 1024 (9th Cir.1994), we distinguished *Castillo–Felix* on the basis of facts not considered in that case. We took a closer look at the term "domicile" for § 212(c) purposes and reiterated that *Castillo–Felix* adopted a definition "consonant with its common law meaning: that 'aliens must not only be physically present here, but must intend to remain.'" 16 F.3d at 1025 (quoting *Castillo–Felix* ).

The IRCA amnesty provision at issue here, INA § 245A, codified at 8 U.S.C. § 1255a, "was a broad legalization program for aliens who had resided unlawfully in the United States since 1982, had been continuously physically present here since 1986, and who were otherwise admissible as immigrants." *Naranjo–Aguilera v. INS,* 30 F.3d 1106, 1108 (9th Cir.1994).[5] Congress reasoned as follows:

> The United States has a large undocumented alien population living and working within its borders. Many of these people have been here for a number of years and have become a part of their communities. Many have strong family ties here which include U.S. citizens and lawful residents. They have built social networks in this country. They have contributed to the United States in myriad ways, including providing their talents, labor and tax dollars. However, because of their undocumented status, these people live in fear, afraid to seek help when their rights are violated, when they are victimized by criminals, employers or landlords or when they become ill.
>
> Continuing to ignore this situation is harmful to both the United States and the aliens themselves. However, the alterna-

tive of intensifying interior enforcement or attempting mass deportations would be both costly, ineffective, and inconsistent with our immigrant heritage.

> The Committee believes that the solution lies in legalizing the [status] of aliens who have been present in the United States for several years, recognizing that past failures to [enforce] the immigration laws have allowed them to enter and to settle here.

H.R.Rep. No. 99–682(I), 99th Cong., 2d Sess. 49, reprinted in 1986 U.S.Code Cong. & Admin.News 5649, 5653.

"When IRCA was passed, it was estimated that there were between 4 and 6 million persons living in the United States who would be eligible for legalization." 2 Charles Gordon & Stanley Mailman, *Immigration Law and Procedure,* § 52.03 at 52–6 (1994) ("Gordon & Mailman"). About 1.8 million aliens applied for the § 245A program. Immigration and Naturalization Service, U.S. Dep't of Justice, *Immigration Reform and Control Act, Report on the Legalized Alien Population,* at 5 (March 1992).

Under § 245A, an alien was adjusted to "temporary resident status" by making a timely prima facie showing that the alien (1) had been in continuous unlawful status since 1982, (2) had been continuously physically present in the United States· since November 6, 1986 (excluding "brief, casual, and innocent" absences), and (3) was otherwise admissible as an immigrant. 8 U.S.C. §§ 1255a(a)(1), (2), (3), and (4). If granted, temporary resident status was effective as of the date the application was filed. 8 C.F.R. § 245a.3(m).

"The legalization program was seen as a process by which aliens initially eligible would be brought within the fold of lawful permanent residence in two steps. An alien who is eligible for temporary residence is ordinarily eligible in due course for permanent residence, unless he or she meanwhile commits a disqualifying act." Gordon & Mailman, *supra,* § 52.08[1] at 52–41. An alien's status is adjusted from temporary to

---

5. Similarly, a separate IRCA provision, section 210, referred to as the Special Agricultural Workers program applied to certain undocumented alien farmworkers. *See* 8 U.S.C. § 1160.

permanent resident upon timely application and a showing of (1) continuous residence since obtaining "temporary" status, (2) admissibility as an immigrant, and (3) basic citizenship skills. 8 U.S.C. §§ 1255a(b)(1)(A), (B), (C), and (D). For purposes of "continuous residence" an alien is permitted "to return to the United States after such brief and casual trips abroad as reflect an intention to adjust to lawful permanent resident status[.]" 8 U.S.C. § 1255a(b)(3)(A).

We based our holding in *Castillo–Felix* ("lawful unrelinquished domicile" for purposes of § 212(c) begins when an alien was admitted for permanent residence) on two reasons: first, that "temporary" residence is inconsistent with "domicile," and, second, that previous INS interpretations were entitled to deference where statutory language was ambiguous. 601 F.2d at 464–466. We reasoned, in part:

the fact that a small group of nonimmigrants [such as diplomats] could conceivably qualify as "lawfully" domiciled within this country without acquiring permanent resident status does not persuade us that "lawful" [in "lawful unrelinquished domicile"] should be defined without reference to the phrase "lawfully admitted for permanent residence."

We emphasize first that most nonimmigrants must have a residence in a foreign country which they do not intend to abandon, or must be here for a temporary purpose, or both. *To establish domicile, aliens must not only be physically present here, but must intend to remain. If aliens are here for a temporary purpose, they cannot establish domicile.*

601 F.2d at 464 (emphasis added) (footnotes omitted).

■ Thus, our reasoning in *Castillo–Felix* did not contemplate an amnesty program such as IRCA § 245A. Under IRCA, Congress intended to benefit well over a million aliens. Under IRCA, a "temporary resident" alien who adjusts to "permanent residence"

must intend to remain in the United States while in temporary status. Under IRCA, an alien who is physically present and intends to remain (and otherwise qualifies) is adjusted to status as a permanent resident. As analyzed by the Seventh Circuit in *Castellon–Contreras,* under IRCA § 245A an alien can establish lawful domicile for purposes of § 212(c) as of the date he or she applied for amnesty. 45 F.3d at 154 and n. 6.

In *Castillo–Felix,* we also noted BIA reasoning regarding the difference between nonimmigrants and "aliens admitted for permanent residence:"

The lawful permanent resident has met extensive quantitative and qualitative standards at time of entry as an immigrant. He has, legally and properly, established ties to this country. He may work. He normally looks toward citizenship and will have that privilege in time. He enjoys greater rights than the nonimmigrant alien and assumes commensurate responsibilities and duties. It is reasonable that after seven years of such lawful resident status the Congress intended he should not be lightly be held barred from continuing in that status under [§ 212(c) ].

On the other hand, the statutory scheme clearly reflects an entirely different view of the nonimmigrant. He has none of the foregoing attributes.... It is not reasonable to believe that the Congress visualized him as remaining here for years, until such time as he could achieve lawful permanent residence, and thus qualify for benefits of section 212(c).

601 F.2d at 465 n. 13 (quoting *Matter of Anwo,* Interim Decision # 2604 at 5–6 (BIA 1977)). This reasoning also did not contemplate a program such as IRCA. Indeed, under this reasoning, an alien covered by IRCA § 245A would qualify for § 212(c) consideration.[6]

■ We are convinced that the language cited by the INS from *Castillo–Felix* is inapplicable to the situation now before us. We conclude that a lawful permanent resident

---

6. We also note that a recent BIA decision analyzing IRCA indicates that the BIA views "temporary resident" status under IRCA § 245A as similar to permanent domicile. In *Matter of Chavez–Calderon,* Int.Dec. 3212, 1993 WL 495141 (BIA 1993), the BIA decided that a temporary resident under IRCA § 210 was not entitled to "brief,

casual and innocent" departures for purposes of determining "meaningful interruptions" in residence in this country. In so determining, the BIA reasoned:

a crucial distinction exists between temporary residents under section 210 of the Act on the

who gained such status under IRCA § 245A by first becoming a "temporary" resident established "lawful domicile" for purposes of § 212(c) as of the date of his or her application for amnesty (if a prima facie application was presented at that time). Indeed, much of the reasoning in *Castillo–Felix* supports such a conclusion. Accordingly, we remand this matter for consideration of § 212(c) relief.[7]

### CONCLUSION

Petitioner may not collaterally attack her conviction in deportation proceedings. Thus, the BIA did not err in upholding the IJ's finding that Petitioner is deportable. However, Petitioner now qualifies for consideration of § 212(c) relief. We grant the petition and remand for consideration for such discretionary relief.

one hand, and aliens eligible for adjustment under section 245A, lawful permanent residents, and applicants for suspension of deportation on the other. *All members of the latter classes possess some form of long-term residence in the United States and concomitant ties to this country.* ... We do not believe that the language of section 210(a)(4) of the Act, without more, dispenses with the preferential treatment previously provided only to aliens with long-term residences in this country. 1993 WL 495141, at *4 (emphasis added).

7. Because Petitioner made a nonfrivolous challenge to her deportability, she has continued to accrue time since 1988 during the pendency of this appeal. *Wall v. INS*, 722 F.2d 1442, 1444–45 (9th Cir.1984).