United States Court of Appeals,

Fifth Circuit.

No. 94-40440.

Yassin Hassan HUSSEIN, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Aug. 17, 1995.

Petition for Review of an Order of the Board of Immigration Appeals.

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

The Immigration and Naturalization Service ("INS") initiated deportation proceedings against Yassin Hassan Hussein, a citizen of Egypt and, at the time, a lawful permanent resident ("LPR"). An immigration judge ("IJ") ordered Hussein deported, and he appealed to the Board of Immigration Appeals ("BIA"). The BIA dismissed his appeal, and Hussein petitions this Court for review of the BIA's dismissal. We deny his petition.

I

Hussein began residing in the United States unlawfully sometime before January 1, 1982. He has continued to reside in the United States since that time. On December 10, 1988, Hussein obtained lawful permanent resident ("LPR") status under the amnesty provisions of the Immigration Reform and Control Act ("IRCA"), 8

1

U.S.C. § 1255a (1994).[1]  Hussein was subsequently convicted of theft, theft by check, and injury to a child, and the INS initiated deportation proceedings against him.

At his deportation hearing, Hussein conceded deportability and sought to apply for a waiver of deportation under section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) (1994).  Section 212(c) provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section.[2]

8 U.S.C. § 1182(c).  Although by its terms, section 212(c) applies to the admission of aliens returning to the United States after a temporary departure, we have interpreted it to apply to LPR's who face deportation.  *See Prichard-Ciriza v. I.N.S.,* 978 F.2d 219, 222 (5th Cir.1992) (citing *Ghassan v. I.N.S.,* 972 F.2d 631, 633-34 & n. 2 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1412, 122 L.Ed.2d 783 (1993)).[3]  This means that if an alien meets the

---

[1]In pertinent part, IRCA provided for the adjustment from illegal status to lawful permanent residence for aliens who could prove, *inter alia,* that they had resided in the United States illegally since sometime before January 1, 1982, through the date on which they filed an application for LPR status.  8 U.S.C. § 1255a(a)(2)(A).  An alien who met the statutory requirements under § 1255a(a) was granted lawful temporary residence, which could subsequently be adjusted to lawful permanent residence. *See* 8 U.S.C. § 1255a(b).

[2]Subsection (a) designates classes of excludable aliens based on health, criminal, security, and other grounds. *See* 8 U.S.C. § 1182(a).

[3]We explained the origin of this extension in *Ghassan:*

criteria of section 212(c), that is, if he has attained lawful permanent residence and has maintained a "lawful unrelinquished domicile of seven consecutive years," he is eligible to apply for a waiver of deportation. The decision to grant a waiver of deportation remains within the discretion of the Attorney General. 8 U.S.C. § 1182(c).

The IJ pretermitted Hussein's application for section 212(c) relief on the grounds that Hussein was ineligible for such a waiver. The IJ applied the BIA's longstanding interpretation of section 212(c), which equates "lawful unrelinquished domicile" with lawful permanent residence,[4] and she held that because Hussein had become a lawful permanent resident on December 10, 1988, he could not establish that he had maintained a lawful unrelinquished domicile for seven consecutive years.

Hussein appealed the IJ's decision to the BIA, challenging the

---

> By its terms the statute seems to apply only to aliens who temporarily left the country voluntarily, but the Second Circuit has held that the Equal Protection Clause forbids distinguishing between aliens who briefly left and reentered the country and are facing deportation proceedings and those who have not left and are being deported. *See Francis v. INS,* 532 F.2d 268, 272-73 (2d Cir.1976). The BIA applies the Second Circuit's ruling nationwide. *See Ashby v. INS,* 961 F.2d 555, 557 n. 2 (5th Cir.1992); *Mantell v. United States Dep't of Justice,* 798 F.2d 124, 125 (5th Cir.1986).

*Ghassan,* 972 F.2d at 633-64 n. 2.

[4]*See Matter of Anwo,* 16 I. & N. Dec. 293 (B.I.A.1977) (holding that seven-year period in § 212(c) begins to run only when alien attains lawful permanent resident status); *accord Matter of Kim,* 17 I. & N. Dec. 144 B.I.A.1979); *Matter of S,* 5 I. & N. Dec. 516 (B.I.A.1953).

IJ's interpretation of section 212(c) and arguing that his lawful domicile in the United States began on November 6, 1986, the effective date of IRCA. The BIA affirmed the IJ's interpretation of section 212(c) and dismissed Hussein's appeal, rendering his deportation order final. Hussein now petitions this Court for review of the BIA's decision, arguing that the BIA and IJ erroneously interpreted section 212(c).

## II

Hussein argues that the BIA erroneously interpreted section 212(c) of the INA by equating "lawful unrelinquished domicile" with lawful permanent residence. The Attorney General argues that because § 212(c) is ambiguous, the BIA's interpretation is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).[5]

Prior to the enactment of IRCA, the circuit courts of appeals were split over the validity of the BIA's interpretation of the seven-year domicile requirement of section 212(c). The Fourth Circuit and the Ninth Circuit deferred to the BIA's interpretation

---

[5]In *Chevron,* "the Supreme Court established a two-step method for judicial review of an agency's interpretation of a statute that it administers." *Mississippi Poultry Ass'n, Inc. v. Madigan,* 31 F.3d 293, 299 (5th Cir.1994) (en banc). First, courts "use "traditional tools of statutory construction' to ascertain whether "Congress has directly spoken to the precise question at issue.' " *Id.* (quoting *Chevron,* 467 U.S. at 842-43 & n. 9, 104 S.Ct. at 2781 & n. 9). "If, but only if, the language of the statute is determined to be either ambiguous or silent on the particular issue is the reviewing court to proceed to the second *Chevron* inquiry: "whether the agency's answer is based on a permissible construction of the statute.' " *Id.* (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782).

4

of § 212(c), *see Chiravacharadhikul v. I.N.S.,* 645 F.2d 248, 250–51 (4th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *Castillo-Felix v. I.N.S.,* 601 F.2d 459, 464–67 (9th Cir.1979), and the Second Circuit rejected the BIA's interpretation as inconsistent with congressional intent, as evidenced by the plain language of the statute and its legislative history. *See Lok v. I.N.S.,* 548 F.2d 37, 40–41 (2d Cir.1977). Since the enactment of IRCA, the Ninth Circuit has limited its holding in *Castillo-Felix* and held that an alien who gains LPR status under IRCA's amnesty provisions establishes lawful domicile as of the date of his or her application for temporary resident status. *See Robles v. I.N.S.,* 58 F.3d 1355, 1360–61 (9th Cir.1995). The Fourth Circuit has not revisited its holding in *Chiravacharadhikul* since the enactment of IRCA.

In *Castellon-Contreras v. I.N.S.,* 45 F.3d 149 (7th Cir.1995), the Seventh Circuit joined the Second Circuit's position in *Lok* and held that the BIA's interpretation of section 212(c) is inconsistent with the plain language of the statute. *Id.* at 153. The Seventh Circuit held that the term "domicile" should be given its common law meaning and defined "lawful domicile" with reference to the legality of an alien's status and his "intent to remain." *Id.* The court stated that an alien who gained LPR status would be considered lawfully domiciled in the United States beginning on the date of his application for temporary resident status. *Id.* at 154; *accord Robles,* 58 F.3d at 1360–61. However, because the court determined that the petitioner in *Castellon-Contreras* could not

5

have applied for an adjustment to temporary resident status more than seven years before his deportation order became final, it affirmed the BIA's determination that he was ineligible for a section 212(c) waiver. *Castellon-Contreras,* 45 F.3d at 154.[6]

This Court, like the D.C., Third, and Eleventh Circuits, has noted the split in the circuits but has neither rejected nor upheld the BIA's interpretation. *See, e.g., Madrid-Tavarez v. I.N.S.,* 999 F.2d 111, 112-13 (5th Cir.1993) (noting circuit split but declining to decide issue because alien entered country illegally without immigrant visa and therefore had no legal status and could not establish lawful domicile even under Second Circuit's interpretation of section 212(c) in *Lok* ); *Graham v. I.N.S.,* 998 F.2d 194, 195-96 (3d Cir.1993) (same, holding that alien could not establish lawful domicile during time spent as nonimmigrant temporary worker); *Melian v. I.N.S.,* 987 F.2d 1521, 1524-25 (11th Cir.1993) (same, holding that alien could not establish lawful domicile during time spent on temporary tourist visa); *Anwo v. I.N.S.,* 607 F.2d 435, 437 (D.C.Cir.1979) (same, holding that alien could not establish lawful domicile during time spent on temporary student visa).

Thus, no circuit has upheld the BIA's view that an alien who attains LPR status through IRCA's amnesty provisions does not become lawfully domiciled until he attains LPR status. Indeed, the

---

[6]*See also Avelar-Cruz v. INS,* 58 F.3d 338, 341 (7th Cir.1995) (reversing BIA decision and holding that alien "became a lawful domiciliary on [the date on which] he became a lawful temporary resident under IRCA's amnesty provisions").

only two courts that have addressed the validity of the BIA's restrictive view of section 212(c) as it applies to aliens granted amnesty under IRCA have rejected it. *See Castellon-Contreras,* 45 F.3d at 153-54; *Robles,* 58 F.3d at 1360-61. The only circuit authority generally supporting the BIA's position is *Chiravacharadhikul v. I.N.S.,* 645 F.2d 248 (4th Cir.1981), a pre-IRCA case that the Fourth Circuit has neither revisited since the passage of IRCA nor applied to an alien who attained LPR status through IRCA's amnesty provisions.

We do not reach the validity of the BIA's interpretation of section 212(c) in this case, however, because even if we assume that "lawful domicile" is not limited to lawful permanent residence, Hussein has not established that he maintained a lawful domicile in the United States for seven years preceding his deportation.[7]

Hussein applied for and received temporary and then permanent resident status under the amnesty provisions of IRCA, 8 U.S.C. § 1255a. Under IRCA, the earliest date that Hussein could have applied for temporary residency was May 5, 1987. *See* 8 U.S.C. § 1255a(a)(1)(A) (establishing application period as beginning on date designated by Attorney General); 8 C.F.R. § 245a.2(a)(1) (1995) (designating May 5, 1987 as beginning date for amnesty application period). Therefore, the earliest date his lawful

---

[7]*Compare Madrid-Tavarez v. I.N.S.,* 999 F.2d at 112 (not reaching statutory interpretation question because petitioner could not establish lawful domicile under *Lok* during time spent as illegal alien).

temporary resident status could have become effective was May 5, 1987. *See* 8 C.F.R. § 245a.2(s) (providing that status of alien whose application for temporary residency is approved shall be adjusted to lawful temporary residence as of filing date of application). However, Hussein's deportation became final on April 22, 1994, less than seven years later.[8] Consequently, even assuming Hussein's status had been adjusted to lawful temporary resident on the earliest possible day, May 5, 1987, he would not be eligible for a waiver of deportation under section 212(c).[9]

Hussein argues that he became a lawful domiciliary on the date that IRCA became effective, November 6, 1986, because after that date the INS could not freely deport him. *See* 8 U.S.C. § 1255a(e)(1). Under section 1255a(e), titled "temporary stay of deportation and work authorization for certain applicants," an alien who was apprehended before the beginning of the amnesty application period and who established "a prima facie case of eligibility to have his status adjusted under subsection (a)...."

---

[8]Hussein's deportation became final, and his lawful permanent resident status ended, on April 22, 1994, because that is the date on which the BIA dismissed Hussein's appeal of the IJ's order of deportation. *See Prichard-Ciriza v. I.N.S.,* 978 F.2d 219, 223 (5th Cir.1992) (holding that alien's deportation became final, and his lawful permanent residence ended, on date BIA dismissed alien's appeal of IJ's order of deportation); *Rivera v. I.N.S.,* 810 F.2d 540, 541-42 (5th Cir.1987) (holding that alien's deportation became final, and his lawful permanent residence ended, on date BIA affirmed IJ's order of deportation); *accord Castellon-Contreras,* 45 F.3d at 155 & n. 8.

[9]Because Hussein would not be eligible for a § 212(c) waiver even assuming he applied on the first possible date for amnesty, we need not, as Hussein argues we must, remand for a factual determination of when he actually applied for and received lawful temporary and permanent resident status.

8

was not deportable and was entitled to an authorization to work. 8 U.S.C. § 1255a(e)(1). Hussein argues that because of this limitation on his deportability, he resided in the United States "under color of law" and with the "incidents of lawful domicile" beginning on the effective date of IRCA. However, we agree with the Seventh Circuit, which rejected an identical claim in *Castellon-Contreras,* that IRCA's limitation on an illegal alien's deportability did not change the alien's previously illegal status into a lawful status. *Castellon-Contreras,* 45 F.3d at 154. "Rather, in order to gain LPR status under IRCA, [the alien] had to establish that from before sometime before January 1, 1982, he "has resided continuously in the United States in an *unlawful* status since such date *and through the date the application is filed* under this subsection.' " *Id.* (quoting 8 U.S.C. § 1255a(a)(2)(A)).[10] Because under IRCA itself, an alien retains his illegal status at least until he files an application for amnesty under § 1255a(a), we reject Hussein's argument that he became lawfully domiciled in the United States on the effective date of IRCA.[11] Therefore,

---

[10]The Seventh Circuit is the only court to have addressed the argument that the effective date of IRCA started the seven-year clock.

[11]We note that we have assumed for purposes of argument that because Hussein's status was adjusted to lawful permanent residency under the amnesty provisions of IRCA, he has resided in the United States since before January 1, 1982. However, we note that in the INS' Order to Show Cause, in which it initiated deportation proceedings against Hussein, the INS alleged that Hussein entered the United States as a nonimmigrant visitor on a six-month temporary stay visa on August 19, 1987, almost a year after IRCA's effective date. Hussein admitted this allegation during his deportation proceeding. If it is true that Hussein has resided in the United States continually only since August

9

because Hussein remained an illegal resident alien until he filed his application, which was necessarily less than seven years before his deportation became final, he cannot satisfy the seven-year lawful domicile requirement. *See Madrid-Tavarez,* 999 F.2d at 113 (holding that alien could not count time spent in United States illegally without an immigrant visa toward seven year lawful domicile requirement); *Prichard-Ciriza,* 978 F.2d at 223 ("Since [petitioner] could not have been lawfully domiciled in the United States when he was in the United States illegally, the time he spent here as an illegal alien, even if it immediately preceded time spent as a lawful resident alien, could not count toward the seven-year requirement.").

In sum, Hussein cannot demonstrate that he has maintained a lawful domicile continuously for seven years because the earliest date on which his status could have been adjusted to a legal status was May 5, 1987, less than seven years before the BIA's final order of deportation. Because Hussein cannot satisfy the seven-year domicile requirement, we hold that the BIA correctly determined that Hussein was ineligible to apply for a section 212(c) waiver of deportation. Consequently, we do not decide whether the BIA has properly limited "lawful unrelinquished domicile" to lawful

---

19, 1987, he would have failed to establish seven years of domicile, let alone lawful domicile, in the United States. However, because the entry date alleged in the Order to Show Cause is inconsistent with his status adjustment under IRCA, because the INS does not argue this issue, and because Hussein's § 212(c) claim fails even assuming he has resided in the United States since before 1982, we assume the more favorable facts as he describes them on appeal.

10

permanent residence, and we leave for another day the question of whether an alien may became lawfully domiciled when his status is adjusted to lawful temporary resident under IRCA.

III

For the foregoing reasons, Hussein's petition for review of the BIA's final order of deportation is **DENIED.**