United States Court of Appeals,

Fifth Circuit.

No. 95-60170.

Raymond WHITE, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Feb. 16, 1996.

Petition for Review of Order of the Board of Immigration Appeals.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and SCHWARZER[1], District Judge.

DUHÉ, Circuit Judge:

Petitioner Raymond White seeks review of the Board of Immigration Appeals' ("BIA") decision denying his application for discretionary relief from deportation under § 212(c) of the Immigration and Nationality Act ("INA"). The BIA determined that White was ineligible for § 212(c) relief because he did not maintain seven years of lawful unrelinquished domicile in this country. Because we hold that the Immigration and Naturalization Service's ("INS") interpretation of "domicile" is inconsistent with the statute's plain meaning, we reverse the decision of the BIA and remand for a determination of White's eligibility for a § 212(c) waiver.

BACKGROUND

Raymond White, a Jamaican citizen, entered the U.S. in 1978 as a nonimmigrant agricultural worker. In September 1987, White was

---

[1]District Judge of the Northern District of California, sitting by designation.

1

granted lawful temporary resident status under the Special Agricultural Workers ("SAW") program of the Immigration Reform and Control Act of 1986 ("IRCA"). *See* 8 U.S.C. § 1160. Pursuant to this IRCA program, White obtained lawful permanent resident status in December 1990.

In May 1990, before becoming a permanent resident, White was convicted of distributing and conspiring to distribute crack cocaine. As a result, the INS initiated deportation proceedings against White in March of 1994. White sought a waiver of deportation under § 212(c) of the INA. That provision states in part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General....

8 U.S.C. § 1182(c).[2] White claimed that he met the requirements of § 212(c) because he became a temporary resident (and domiciliary) pursuant to IRCA in September 1987; he intended to remain permanently in the United States since that time; he confirmed that intent by becoming a permanent resident in December 1990; and he maintained the same domicile for at least seven years.

The Immigration Judge ("IJ") held that White could not receive this discretionary relief because he had not accumulated the

---

[2]Although Section 212(c) by its terms applies to returning residents only, courts and the BIA have interpreted the provision to apply to residents who have not left the country but face deportation. *See, e.g., Mantell v. U.S. Dep't of Justice, INS,* 798 F.2d 124, 125 n. 2 (5th Cir.1986); *Matter of Silva,* 16 I & N Dec. 26, 30 (BIA 1976).

2

required seven years of lawful domicile. The IJ relied on an INS regulation providing that an "Immigration Judge shall deny an application ... under section 212(c) of the Act if ... the alien has not maintained lawful permanent status in the United States for at least seven consecutive years immediately preceding the filing of the application." 8 C.F.R. § 212.3(f)(2) (promulgated in 1991 as interim final rule). Because White did not become a permanent resident until 1990, the IJ found that he did not meet this seven-year requirement.

The BIA affirmed this decision, concluding that it was bound by 8 C.F.R. § 212.3(f)(2) and its own precedent.

### DISCUSSION

White argues that the IJ and BIA erred in computing his years of "unrelinquished domicile" by reference only to his years of "permanent residence." The INS, on the other hand, argues that we should defer to its regulation implementing § 212(c), which provides that lawful domicile does not begin until an alien becomes a lawful permanent resident. 8 C.F.R. § 212.3(f)(2).

Because the BIA urges that it is bound by this regulation, the precise issue is whether the INS's interpretation of § 212(c) passes muster under *Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). An agency is entitled to *Chevron* deference in construing statutory language only when congressional intent is unclear. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent

3

of Congress." *Id.* at 842-43, 104 S.Ct. at 2781-82. Only "if the statute is silent or ambiguous with respect to the specific issue ... [does a court ask] whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2781-82. Under *Chevron*'s first step, the plain language of the statute is the most reliable indicator of congressional intent. In determining a statute's plain meaning, we assume that "Congress intends the words in its enactments to carry their ordinary, contemporary, common meaning." *Pioneer Investment Services v. Brunswick Associates,* 507 U.S. 380, ----, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (internal quotation marks omitted).

Domicile has a well-developed meaning in the common law, as the Supreme Court recently recognized: " "Domicile' is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted." *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). To establish domicile, one must show: (1) physical presence within the United States; and (2) intent to remain in the United States indefinitely. "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Id.*

By contrast, the INA defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not

4

having changed." 8 U.S.C. § 1101(a)(20). Being accorded this status does not by itself establish a domicile, nor is it a prerequisite for becoming a lawful domiciliary. *Castellon-Contreras v. INS,* 45 F.3d 149, 153-54 (7th Cir.1995). Consequently, for a domicile to be lawful, an alien need not obtain lawful permanent residency but must "have the ability under the immigration laws, to form the intent to remain in the United States indefinitely." *Id.* at 153. A person may form the requisite intent when she becomes a "lawful temporary resident" under IRCA because the statute provides for her eventual adjustment to permanent resident status.[3] Therefore, it is entirely consistent with IRCA for an alien to maintain a "lawful unrelinquished domicile" without first having been "lawfully admitted for permanent residence."

In addition to the distinction between "permanent residence" and "domicile," a plain reading of the text reveals yet another reason why the INS's statutory interpretation is misguided. The textual structure of the statute does not require both seven years of domicile and permanent residency. The statute establishes two separate and independent conditions, neither of which attempts to limit or qualify the other: (1) lawful admission as a permanent resident; and (2) return to a lawful unrelinquished domicile of seven consecutive years. The additional requirement, advanced by

---

[3]SAW provides: "The Attorney General shall adjust the status of any alien provided lawful temporary resident status under paragraph (1) to that of an alien lawfully admitted for permanent residence" after either one or two years of temporary residency (depending on the length of the alien's prior agricultural labor). 8 U.S.C. § 1160(a)(2).

5

the INS, that permanent residence be a prerequisite for establishing domicile is not in the text of the statute. By adding eligibility requirements without textual authority, the agency is exceeding its delegated authority.

Despite the very plain meaning of the statute, the INS argues that "domicile" is a term of art with a specialized meaning in the § 212(c) context, and that Congress's enactment of IRCA was predicated on its acquiescence in this long-standing INS interpretation. However, "[n]othing indicates that Congress intended to alter this "time-tested definition [of domicile] when it enacted § 212(c).' " *Castellon-Contreras,* 45 F.3d at 153 (quoting *Melian v. INS,* 987 F.2d 1521, 1524 (11th Cir.1993)).

The INS also contends that the Fourth and Ninth Circuits have deferred to its construction of § 212(c). *See Chiravacharadhikul v. INS,* 645 F.2d 248, 250-51 (4th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *Castillo-Felix v. INS,* 601 F.2d 459, 464-67 (9th Cir.1979). *But cf. Lok v. INS,* 548 F.2d 37, 40-41 (2d Cir.1977) (rejecting BIA reading of § 212(c)). These cases, however, were decided before IRCA's enactment, and the Ninth Circuit recently limited *Castillo-Felix* by holding that an alien who gains lawful permanent resident status under IRCA's amnesty provisions establishes lawful domicile when she adjusts to temporary resident status. *See de Robles v. INS,* 58 F.3d 1355, 1360-61 (9th Cir.1995).[4] In addition, the Seventh Circuit rejected

---

[4]The BIA acknowledged that it is bound by *de Robles* in cases arising in the Ninth Circuit. *In re Carlos Cazares-Alvarez,* 1996 WL 23410 (BIA January 3, 1996).

the INS's position in an IRCA case, holding that "lawful unrelinquished domicile" in § 212(c) cannot be equated with "lawful permanent residence." *Castellon-Contreras,* 45 F.3d at 153; *see also Avelar-Cruz v. INS,* 58 F.3d 338, 340 (7th Cir.1995). Moreover, we recently observed in *Hussein v. INS,* 61 F.3d 377 (5th Cir.1995), that "no circuit has upheld the BIA's view that an alien who attains LPR [lawful permanent resident] status through IRCA's amnesty provisions does not become lawfully domiciled until he attains LPR status." *Id.* at 380.

Finding no ambiguity in § 212(c), we hold that the INS impermissibly construed the plain meaning of the statute. Thus, we will not equate "domicile" and "permanent residence" unless failing to do so would defeat the statutory scheme or create an absurd result. *Castellon-Contreras,* 45 F.3d at 153. Applying the common law definition of "domicile" does not defeat Congress's statutory scheme. In fact, it actually helps execute it. By creating the § 212(c) waiver process, Congress authorized the Attorney General to protect aliens with close ties to this country from suffering extreme hardship as a result of deportation. *Melian,* 987 F.2d at 1525 n. 6. Adopting the INS's interpretation would restrict the Attorney General's ability to exercise this important discretion by restricting the class of persons eligible for relief. Indeed, "the agency's interpretation ... frustrates the legislative scheme because it works to prevent those who *have* developed close ties to the United States ... from being able to seek a waiver." *Rosario v. INS,* 962 F.2d 220, 225 (2d Cir.1992). Therefore, we will not

defer to the agency's interpretation, which is contrary to congressional intent, common law principles and common sense.

CONCLUSION

Accordingly, we reverse the decision of the Board of Immigration Appeals and remand for consideration of Mr. White's eligibility for a § 212(c) waiver.

REVERSED and REMANDED.